Rachel E. Kaufman
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ERICA CARDENAS, individually and
on behalf of all others similarly situated,

   *Plaintiff*,

*v.*

CAN I HAVE MONEY LLC, a New
York company,

   *Defendant.*

Case No.   **'26 CV 0335 CAB KSC**

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

 Plaintiff Erica Cardenas ("Plaintiff Cardenas" or "Cardenas") brings this Class Action Complaint and Demand for Jury Trial against Defendant Can I Have Money LLC ("Defendant" or "CIHM") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured

by Defendant's conduct. Plaintiff Cardenas alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.      Plaintiff Cardenas is a resident of Chula Vista, California.

2.      Defendant CIHM is a New York registered company located in New York, New York. Defendant CIHM conducts business throughout the US including in this District.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction over the Defendant because the Defendant does business in this District.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the Plaintiff resides in this District.

## INTRODUCTION

6.      As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain

for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8.    By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.    According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in November 2025 alone, at a rate of 128.7 million per day. www.robocallindex.com (last visited December 24, 2025).

11.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.     Can I Have Money provides working capital to businesses throughout the US.[3]

15.     Can I Have Money sends telemarketing solicitation text messages to generate business.

16.     Unfortunately, some of the text messages that Can I Have Money sends are sent to consumers' phone numbers that are registered on the DNC, as per Plaintiff's experience.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/canihavemoney

CLASS ACTION COMPLAINT
-4-

17.     In job postings for an MCA Broker, Can I Have Money clearly states

that it provides leads and software for texting:

**MCA Broker**
Can I Have Money LLC · Brooklyn, NY (On-site)

### About the job

Looking to bring on more people in the MCA space. If you know, you know.
Paying high commission depending on experience ie. 30-80%
yes you read that right.
offer includes:

- leads
- texting software
- calling software
- email software
- CRM

Can be remote with experience or in office.

2 offices one on Ave J and one in Williamsburg.

Contact us, say Hi and lets get you onboarded.                    [4]

18.     Consumers have posted complaints directly to CIHM through its Better

Business Bureau page about unsolicited text messages that they received, including:

- "Constant spam, both phone call and *text message spam*. Always from
  spoofed/call center numbers. They refuse to remove you from their list
  (which they are buying as lead lists) *even if you have no business to
  lend to*.Just a bunch of spammers who incessantly annoy people trying
  to get work done. Stop calling me."[5] (emphasis added)

- I *keep receiving texts* regarding a customer named (REMOVED) who
  apparently gave this company my contact number. This company has
  harrassed me for about 6 months after constant texts messages thst *I am
  not (REMOVED)*. BBB needs [to] give this company a failing grade
  for harassment and sent me $$$ as I am going through a stressful, trying

---

[4] https://www.linkedin.com/jobs/view/3928207459
[5] https://www.bbb.org/us/ny/new-york/profile/business-loans/can-i-have-money-llc-0121-87174314/complaints

time over the death of my son in a motorcycle accident... Last message was today. If this continues I will seek harassment charges against Can I Have Money LLC...”[6] (emphasis added)

- “(REMOVED), an employee of Can I Have Money, LLC, sent a pre-recoded ***text message to my cell phone number***. My cell phone number has been on the Texas No Call List, as well as the ***National Do Not Call Registry***…” (emphasis added)

19.    Additional complaints about unsolicited text messages have been posted on Trustpilot.com, including:



6 Id.
7 https://www.trustpilot.com/review/canihavemoney.com?stars=1
8 Id.

CLASS ACTION COMPLAINT

-6-



20.    In response to these text messages, Plaintiff Cardenas brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and award of statutory damages to the members of the Class and costs.

## PLAINTIFF CARDENAS' ALLEGATIONS

21.    Plaintiff Cardenas is the sole owner and exclusive user of her cell phone number ending in 5615.

22.    Plaintiff Cardenas has owned her cell phone number for over 10 years.

---

[9] Id.
[10] Id.

23.    Plaintiff Cardenas registered her cell phone number on the DNC on November 9, 2023.

24.    Plaintiff Cardenas uses her cell phone number for personal use only as one would use a landline telephone number in a home.

25.    Plaintiff Cardenas uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

26.    Plaintiff Cardenas does not have a landline in her home.

27.    Plaintiff Cardenas' cell phone number is registered under her husband's name through Verizon and not registered under any business name.

28.    Plaintiff Cardenas' Verizon plan is registered to her home address, not the address of a business.

29.    Plaintiff Cardenas pays for her cell phone plan. It is not reimbursed by a business.

30.    Plaintiff Cardenas pays for a Go Unlimited Verizon plan for her cell phone number.

31.    Go Unlimited is a plan for individuals or families that offers unlimited data, calling and texting.

32.    Plaintiff Cardenas has never had her cell phone number associated with a business.

33.    This phone number is not used in any business or marketing materials.

34.    Plaintiff Cardenas has never listed her cell phone number publicly as a business contact number.

35.    On November 10, 2025 at 11:45 AM, Plaintiff Cardenas received an unsolicited text message to her cell phone from 440-771-8354.

36.    Plaintiff texted 440-771-8354 back right away to confirm the company name, but she did not receive a response:

> **+1 (440) 771-8354** ›
>
> Text Message • SMS
> Mon, Nov 10 at 11:45 AM
>
> Hi Eric, it's Vanessa I am ready to put together a deal for your business with fair terms. How much can you use?
>
> What company is this ?

37.    When 440-771-8354 is called, an automated system identifies the company name Can I Have Money.[11]

38.    On November 25, 2025 at 8:52 AM, Plaintiff Cardenas received an unsolicited text message to her cell phone from 707-754-3612.

39.    Plaintiff texted 707-754-3612 to confirm which company texted her.

40.    She received 2 immediate responses from 707-754-3612:

---

[11] Based on an investigation conducted by Plaintiff's attorneys

CLASS ACTION COMPLAINT
-9-

+1 (707) 754-3612 ›

Text Message • SMS
Tue, Nov 25 at 8:52 AM

Hey it's Ava! Need anything this week? I work directly in house and can do large amounts + terms or payoff options. What amount works?

Reply STOP to Opt-Out

What company is this ?

we are a direct private lending company. We offer flexible financing options, including lines of credit and term positions with approvals of up to $5M. Our terms range from 2 to 3 years, with competitive rates. Let me know what you have in mind, and I'd be happy to walk you through the details. I can work directly with you. All we need are your last three bank statements and a quick application to get started. How much capital can you use?

I'd be happy to send over a detailed overview of our company. may I have your best email?

41.     When 707-754-3612 is called, an automated system identifies the company name Can I Have Money.[12]

42.     Plaintiff texted 707-754-3612 again and asked to confirm which company texted her.

43.     At 11:32 AM on November 25, 2025, Plaintiff Cardenas received a response from 707-754-3612.

[12] Based on an investigation conducted by Plaintiff's attorneys

CLASS ACTION COMPLAINT
-10-

44.    Plaintiff Cardenas texted 707-754-3612 again to confirm the company name, but there was no response:



45.    On November 26, 2025 at 8:27 AM, Plaintiff Cardenas received another text message from 707-754-3612 asking for her email address:



46.    On December 1, 2025 at 12:35 PM, Plaintiff Cardenas received another unsolicited text message to her cell phone from 707-754-3612.

47.    Plaintiff Cardenas texted 707-754-3612 back on December 1, 2025 at 6:12 PM to confirm the company name, but again there was no response:

Mon, Dec 1 at 12:35 PM

Hello, are you still interested? I'd love to help you get your proposal today?

Mon, Dec 1 at 6:12 PM

What company is this

48.    On December 2, 2025, Plaintiff Cardenas received an unsolicited text message to her cell phone from 857-578-0419 at 7:46 AM.

49.    In response, Plaintiff Cardenas texted 857-578-0419 back to confirm which company texted her.

50.    Plaintiff received an immediate response from 857-578-0419 asking for Plaintiff to provide an email address:



CLASS ACTION COMPLAINT
-12-

51.    When 857-578-0419 is called, an automated system identifies the company name Can I Have Money.[13]

52.    On December 2, 2025 at 9:01 AM, Plaintiff Cardenas received a response from 707-754-3612 to her cell phone:

Tue, Dec 2 at 9:01 AM

My name is Ava Monroe, we are a direct private lending company. We offer flexible financing options, including lines of credit and term positions with approvals of up to $5M.

May I have your best email to send you all our company information

53.    On December 3, 2025 at 10:48 AM, Plaintiff Cardenas received another unsolicited text message to her cell phone from 707-754-3612:

Wed, Dec 3 at 10:48 AM

Just checking in if it's a good time for extra capital, can you use any?

54.    At 12:08 PM on December 3, 2025, Plaintiff Cardenas replied back to 707-754-3612 again to confirm the company name.

55.    Plaintiff Cardenas received a response right away from 707-754-3612 asking for her email address.

---

[13] Based on an investigation conducted by Plaintiff's attorneys.

56.   In response, Plaintiff Cardenas texted 707-754-3612 back and asked for the text messages to stop:



57.   Despite her stop request, Plaintiff Cardenas received an unsolicited text message to her cell phone from 945-245-4607 on December 6, 2025 at 3:03 PM.

58.   Plaintiff texted 945-245-4607 back to confirm the company name, but there was no response:

CLASS ACTION COMPLAINT
-14-

59.    When 945-245-4607 is called, an automated system identifies the company name Can I Have Money.[14]

60.    The text messages that Plaintiff received are directed to Eric.

61.    Plaintiff believes that Eric is the name of somebody who owned her cell phone number years before she acquired it.

62.    Plaintiff Cardenas has never done business with CIHM or consented to be contacted by them.

63.    The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Cardenas in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

64.    Seeking redress for these injuries, Plaintiff Cardenas, on behalf of herself and Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

65.    Plaintiff Cardenas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant CIHM texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been

---

[14] Based on an investigation conducted by Plaintiff's attorneys.

listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

66.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Cardenas anticipates the need to amend the Class definitions following appropriate discovery.

67.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

68.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)    whether Defendant CIHM placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call and/or text message;

(b)    whether the text messages constitute a violation of the TCPA;

(c)    whether members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendant's conduct.

69.    **Adequate Representation**: Plaintiff Cardenas will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Cardenas has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Cardenas and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Cardenas nor her counsel have any interest adverse to the Class.

70.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply

to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Cardenas. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Do Not Call Registry Class)**

71.    Plaintiff repeats and realleges paragraphs 1-70 of this Complaint and incorporates them by reference herein.

72.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

73.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

74.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Cardenas and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

75.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Cardenas and the Do Not Call Registry Class received more than one text message in a 12-month period sent by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

76.     As a result of Defendant's conduct as alleged herein, Plaintiff Cardenas and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

77.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b)  An award of money damages and costs;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA:

d)  An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e)  Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Cardenas requests a jury trial.

**ERICA CARDENAS**, individually and on behalf of all others similarly situated,

---

DATED this 20th day of January, 2026.

By: /s/ *Rachel E. Kaufman*
Rachel E. Kaufman
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*